1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA**

10

11   JOHN KAMINSKI,                          )   Case No.: 1:18-cv-1379 - JLT
                                             )
12              Plaintiff,                   )   ORDER DENYING PLAINTIFF'S MOTION FOR
                                             )   SUMMARY JUDGMENT
13       v.                                  )   (Doc. 30)
                                             )
14   COMMISSIONER OF SOCIAL SECURITY,        )   ORDER DIRECTING ENTRY OF JUDGMENT IN
                                             )   FAVOR OF DEFENDANT, THE COMMISSIONER
15              Defendant.                    )   OF SOCIAL SECURITY, AND AGAINST
                                             )   PLAINTIFF JOHN KAMINSKI
16   _____   )

17          John Kaminski asserts he is entitled to a period of disability and disability insurance benefits

18   under Title II of the Social Security Act.  Plaintiff argues the administrative law judge erred in

19   evaluating the medical record related to his mental impairments and determining his residual functional

20   capacity.  For the reasons set forth below, the administrative decision is **AFFIRMED**.

21                                    **BACKGROUND**

22          In January 2015, Plaintiff filed an application for benefits, alleging disability beginning

23   January 31, 2014.  (Doc. 25-4 at 2)  He asserted disability due to depression, anxiety, post-traumatic

24   stress disorder, methylenetetrahydrofolate reductase, agoraphobia, and lumbago.  (*Id.*)  The Social

25   Security Administration denied Plaintiff's applications at the initial level and upon reconsideration.

26   (*See generally* Doc. 25-4)  Plaintiff requested an administrative hearing on the application and testified

27   before an ALJ on April 3, 2017.  (*See* Doc. 25-3 at 23)

28          The ALJ determined Plaintiff was not disabled and issued an order denying benefits on

                                              1

1   November 1, 2017.  (Doc. 25-3 at 23-36)  Plaintiff requested review of the decision with the Appeals

2   Council, which denied the request on July 25, 2018.  (*Id.* at 4-6)  Therefore, the ALJ's determination

3   became the final decision of the Commissioner of Social Security.

4   ## STANDARD OF REVIEW

5           District courts have a limited scope of judicial review for disability claims after a decision by

6   the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

7   such as whether a claimant was disabled, the Court must determine whether the Commissioner's

8   decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

9   ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

10  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

11  *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

12          Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

14  389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

15  must be considered, because "[t]he court must consider both evidence that supports and evidence that

16  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

17  ## DISABILITY BENEFITS

18          To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

19  engage in substantial gainful activity due to a medically determinable physical or mental impairment

20  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

21  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

22          his physical or mental impairment or impairments are of such severity that he is not only
            unable to do his previous work, but cannot, considering his age, education, and work
23          experience, engage in any other kind of substantial gainful work which exists in the
            national economy, regardless of whether such work exists in the immediate area in
24          which he lives, or whether a specific job vacancy exists for him, or whether he would be
            hired if he applied for work.
25

26  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

27  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

28  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 31, 2015.  (Doc. 25-3 at 25)  Second, the ALJ found Plaintiff had "the following severe impairments: depression; anxiety; schizoaffective disorder; obsessive-compulsive disorder (OCD); and post-traumatic stress disorder (PTSD)."  (*Id.*)  At step three, the ALJ considered the "paragraph B" criteria and determined Plaintiff's impairments did not meet or medically equal a Listing, including Listings 12.03, 12.04, 12.06, and 12.15.  (*Id.* at 27-29)  Next, the ALJ defined Plaintiff's residual functional capacity as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He is limited to simple, routine, and repetitive tasks.  He is limited to work in a low-stress job, which is defined as requiring only occasional decision making and having only occasional changes in the work setting.  He is also limited to only occasionally face-to-face interaction with the public.

(*Id.* at 29)  With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work."  (*Id.* at 34)  However, at step five the ALJ found there "are jobs that exist in significant numbers in the national economy that the claimant can perform," such as scrap sorter and garment sorter.  (*Id.*)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from January 31, 2014, through the date of the decision.  (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ failed "to use the special procedures for evaluating mental illness" and

"failed to address Adult Mental Listing 12.03." (Doc. 30 at 12-13) In addition, Plaintiff asserts the ALJ erred in evaluating the medical record, by failing to address opinions from his treating psychiatrists and rejecting limitations identified by Dr. DeBattista, an examining physician. (*Id.* at 15-18) He also contends, "The ALJ failed to use medical evidence to provide a mental residual functional capacity evaluation … as required by Social Security Ruling 85-16." (*Id.* at 18) Finally, Plaintiff contends his statements should be credited as true. (*Id.* at 20)

On the other hand, the Commissioner argues "[t]he ALJ properly evaluated Plaintiff's mental impairments using the special technique and reasonably concluded that Plaintiff did not meet the requirements of Listing 12.03." (Doc. 33 at 5, emphasis omitted) Further, the Commissioner asserts the ALJ "properly evaluated … Dr. DeBattista's opinion." (*Id.* at 6, emphasis omitted) The Commissioner argues the decision of the ALJ is supported by substantial evidence, and the Court should affirm the decision. (*Id.* at 10-11)

## A.   Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat a claimant; and (3) non-examining physicians, who neither examine nor treat a claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. § 404.1527(d)(2). Finally, an ALJ must consider opinions of other medical professionals who may offer "judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1).

A medical opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility

4

and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in evaluating the medical evidence and failed to address opinions from his treating psychiatrists and a social worker.  (Doc. 30 at 15-18)  In addition, Plaintiff identifies the opinions of Dr. DeBattista, an examining physician, as relevant evidence in the action.  (*Id.* at 14-15)  Because the opinions of Dr. DeBattista were contradicted by the opinions of other physicians— including non-examining physicians— the ALJ was required to identify specific and legitimate reasons for rejecting the treating physician's opinions.  *See Lester*, 81 F.3d at 831.

### 1.   Evidence from Plaintiff's treating psychiatrists

Plaintiff contends, "[t]he ALJ failed to address [his] treating psychiatrists," Drs. Cynthia Hunt and Charles Edwards. (Doc. 30 at 15, emphasis omitted)  According to Plaintiff, "Psychiatrist Dr. Edward[s] and Psychiatrist Dr. Hunt's opinion pertaining to Kaminski's mental state and his capacity to sustain work. The ALJ did not address either Psychiatrist's opinion." (*Id.* at 18)

#### a.   Dr. Hunt

Plaintiff notes that Dr. Hunt diagnosed him with schizoaffective disorder.  (Doc. 30 at 13, citing AR 308 [Doc. 25-8 at 15])  In addition, Plaintiff observes:

> Psychiatrist Hunt notes Kaminski; feels like he is going to go nuts then no way out except to hurt himself. He awakens during the night flashbacks panic (AR 331). Dr. Hunt notes the first psychotic episode occurred in 1990 and he was hospitalized in 1999. Psychiatrist Hunt finds; worsening of previously reported symptoms. [Kaminski states] functioning as very difficult (AR 333).

(Doc. 30 at 6, alteration in original)

The cited treatment notes indicate that in June 2014, Dr. Hunt evaluated Plaintiff for depression upon referral from his primary care physician and therapist.  (Doc. 25-8 at 37)  She observed that Plaintiff "relay[ed] some history that [was] suspicious for delusional content," and appeared "anxious." (*Id.* at 38)  According to Dr. Hunt, Plaintiff said he felt like he was "going nuts."  (*Id.*)  She indicated Plaintiff likely had schizoaffective disorder, and PTSD needed to be ruled out.  (*Id.* Significantly,

however, the records cited by Plaintiff lack information that would assist the ALJ in identifying any mental functional limitations.

The Regulations inform claimants: "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Where a physician offers "no specific assessment of [the claimant's] functional capacity" during the adjudicated period, the ALJ may reject such evidence.  *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Similarly, an ALJ may reject a physician's "reports [that] do not show how [the claimant's] symptoms translate into specific functional deficits which preclude work activity."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  Consequently, this Court determined an ALJ does not err by not evaluating evidence from treating physician's that does not offer an opinion regarding the claimant's limitations.  *Haydostian v. Colvin*, 2016 U.S. Dist. LEXIS 86864, at *19-20 (E.D. Cal. July 5, 2016).

In *Haydostian,* the Court observed "the crux" of the claimant's argument was "the ALJ improperly evaluated the medical record because he failed to consider the treating physicians' opinions."  *Id.*, 2016 U.S. Dist. LEXIS 86864, at *19.  However, the Court found no "opinion" within the meaning of the Regulations, because the evidence from his treating physicians "offer[ed] no opinion concerning Plaintiff's actual ability to function."  *Id.*  Instead, the medical evidence identified only the symptoms and diagnosis, which were addressed by the ALJ in his opinion.  *Id.* at *21.  The Court found this was insufficient, and the plaintiff failed to demonstrate an error in the ALJ's review of the medical evidence.  *Id.* at *21-22.  Similarly, Dr. Hunt offered only the diagnoses for Plaintiff and did not identify any mental limitations or restrictions.

Dr. Hunt did not offer a "specific assessment" and there is no information from Dr. Hunt regarding the severity of his symptoms; his prognosis; or what Plaintiff was able to do despite his diagnoses of anxiety, depression, and schizoaffective disorder.[1]  (*See* Doc. 25-8 at 37-38, 40)  Because Dr. Hunt did not offer a "specific assessment" of Plaintiff's functional capacity or explain how the

---

[1] Moreover, the ALJ acknowledged that Plaintiff was diagnosed with depression, anxiety, and schizoaffective disorder.  Indeed, the ALJ found these were severe impairments at step two of the sequential evaluation.  (Doc. 25-3 at 25)

6

diagnoses "translate into specific deficits," the ALJ was not required to address the treatment notes as a "medical opinion" from Dr. Hunt.  *See e.g., Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (2010) (when a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report"); *Santiago v. Colvin*, 2015 WL 1469290, at *4 (E.D. Cal. Mar. 30, 2015) ("The statement provides a diagnosis, but does not identify specific restrictions or indicate what activities plaintiff can still perform despite his medical condition. As the statement does not constitute an opinion regarding plaintiff's functional limitations, there was simply no opinion to reject.").  Consequently, Plaintiff fails to show the ALJ erred through not addressing the treatment notes as a medical opinion from Dr. Hunt.

### b.     Dr. Edwards

Plaintiff asserts "Psychiatrist Edward[s] states Kaminski's thought content includes preoccupations and ruminations obsessional depressive with impaired ability to make judgments. He states Kaminski has Tourette's syndrome with psychosis, and depression; include shouting out involuntarily, obsessive ritualization of activities and depression."  (Doc. 30 at 18, citing AR 376-77 [Doc. 25-9 at 16-17]).

The record does not support the assertion that Dr. Edwards diagnosed Plaintiff with Tourette's syndrome.  (*See* Doc. 25-9 at 16-17 [AR 376-77])  Dr. Edwards indicated Plaintiff's diagnoses included: posttraumatic stress disorder, obsessive compulsive disorder, social anxiety disorder, and major depressive disorder.  (*Id.* at 15)  Further, the cited records do not indicate that Dr. Edwards observed Plaintiff "shouting out involuntarily." (*See id.*)  Rather, Dr. Edwards observed Plaintiff was acting "[g]enerally normal" and his activity was "[w]ithin normal limits."  (*Id.* at 16)

Again, the records identified by Plaintiff do not include any information from Dr. Edwards regarding the severity of Plaintiff's symptoms, his prognosis, what he could "still do despite [his] impairment(s)," or his mental restrictions.  (*See* Doc. 25-9 at 16-17)  Without such information, the treatment notes from Dr. Edwards do not qualify as a "medical opinion," and Plaintiff fails to show any error by the ALJ related to the observations of Dr. Edwards.  *See, e.g., Turner*, 613 F.3d at 1223; *Santiago*, 2015 WL 1469290, at *4; *see also Johnson*, 60 F.3d at 1432 (when a physician offers "no specific assessment of [the claimant's] functional capacity," the statement may be rejected).

1

2         c.      Observations of Susan Valencia

      In arguing the ALJ erred in evaluating the opinions of his treating psychiatrists, Plaintiff notes

3  that "Social Worker Valencia documents schizophrenia and anxiety [citation]. Valencia states Kaminski

4  has auditory delusions and paranoia."  (Doc. 30 at 18, citation omitted)  With this limited observation in

5  the opening brief, it is unclear whether Plaintiff believes the ALJ erred by not addressing this statement

6  as one from a treating medical provider.

7        The ALJ must consider the opinions of social workers, who may offer "judgment about some of

8  the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. §

9  404.1527(f)(1); *see also Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (describing

10  circumstances when opinions from "other sources" may be considered acceptable medical opinions).

11  However, Plaintiff fails to identify any medical "opinion" from Ms. Valencia, as the cited records only

12  address Plaintiffs' diagnoses and symptoms.  Thus, Plaintiff fails to show the ALJ erred in addressing

13  the cited evidence from Ms. Valencia.  *See Turner*, 613 F.3d at 1223; *see also Nottoli v. Astrue*, 2011

14  U.S. Dist. LEXIS 15850, at *8 (E.D. Cal. Feb. 16, 2011) (a medical diagnosis "does not demonstrate

15  how that condition impacts plaintiff's ability to engage in basic work activities").

16      2.    Evaluation of the opinion of Dr. DeBattista

17        In May 2015, Dr. DeBattista performed a comprehensive psychiatric consultative evaluation.

18  (Doc. 25-8 at 66)  Dr. DeBattista noted he reviewed record that included medication management and

19  psychotherapy notes from August 2014 and general medical records from January 2015.  (*Id.*)  Plaintiff

20  told Dr. Battista he suffered from depression, OCD, and PTSD as follows:

21        The claimant reports that he has suffered from OCD since he was a currently doing
      things in five including brushing his hairs five times, washing his hands five times,

22        putting on clothes in a particular ritual. This takes up a large amount of time in the day.
      He states that his hands are raw from washing them as frequently as he does. In

23        addition, he also reports PTSD symptoms. He was a civilian pilot that worked with the
      military, testing unmanned drones in the late 1980s. He states that some of the testing

24        involved using human cadavers and he has intrusive imagery and nightmares about the
      effects of these weapons on some of the cadavers. He reports that he never really

25        known any happiness and feels that he has been depressed all his life. He complains of
      fatigue trouble falling asleep and staying asleep anhedonia and depressed mood. He has

26        chronic difficulties with concentration and memory. He does feel hopeless. He denies
      suicidal thoughts. He has no prior history of psychosis, mania or hypomania. He does

27        have a history of alcohol abuse after his mother died about eight years ago, but that has
      now resolved and he is no longer drinking.

28

(Doc. 25-8 at 66)  Dr. DeBattista observed that Plaintiff "would frequently stop to brush his hair five times during the interview" and he appeared "mildly disheveled." (*Id.* at 67)  Plaintiff's mood was "depressed and anxious," and his affect was "mildly agitated." (*Id.*)  He also noted Plaintiff's thought process was"[l]inear and goal directed." (*Id.*)  Dr. DeBattista found Plaintiff's memory "[d]igit span is six digits forward," and Plaintiff "could recall three of three objects after one minute and one of three objects after five minutes." (*Id.*)  Dr. DeBattista opined Plaintiff's "[i]nsight and judgment appeared to be intact." (*Id.*)  He diagnosed Plaintiff with OCD, PTSD, and "a chronic depression that may be a dysthymia." (*Id.* at 68)

Dr. DeBattista opined Plaintiff's prognosis was guarded but believed Plaintiff "would be expected to improve in … 6-12 months with more aggressive treatment." (Doc. 25-8 at 68)  Dr. DeBattista opined: "Based on the examination today,

> 1.  The claimant is able to understand, remember, and carry out simple one or two-step job instructions.
> 2.  The claimant is not able to do detailed and complex instructions.
> 3.  The claimant's ability to relate and interact with coworkers and the public is moderately to markedly impaired.
> 4.  The claimant's ability to maintain concentration and attention persistence and pace is mildly to moderately impaired.
> 5.  The claimant's ability to associate with day-to-day work activity, including attendance and safety is markedly impaired.
> 6.  The claimant's ability to accept instructions from supervisors is not impaired.
> 7.  The claimant's ability to maintain regular attendance in the work place and perform work activities on a consistent basis is moderately impaired.
> 8.  The claimant's ability to work a full day or week is moderately to markedly impaired."

(*Id.*)

After summarizing the findings of Dr. DeBattista, the ALJ indicated "some weight" was given to the opinion. (Doc. 25-3 at 33)  The ALJ found the opinion was "largely supported by the adequate mental functioning that the claimant exhibited," and was consistent with Plaintiff's "generally adequate daily living activities and social activities." (*Id.*)  However, the ALJ rejected portions of the opinion, finding Dr. DeBattista "understates the claimant's ability to associate with day-to-day work activity, relate and interact with coworkers and the public, work a full[] day or week, maintain regular attendance, and perform work activities on a consistent basis." (*Id.* at 33)  The ALJ determined: "This portion of the opinion is contradicted by the claimant's generally adequate mental functioning as

documented in the treatment records (Exhibits 2F, 5F, 7F, and 8F).  (*Id.*)  Specifically, the ALJ found:

> During the adjudicative period, the claimant was often observed to be sad, depressed, tearful, or anxious, but the treatment records reflect that his mental functioning was generally adequate (Exhibits 2F, 5F, 7F, and 8F). He had an appropriate mood, an appropriate affect, normal insight, and normal judgment on February 11, 2014, April 8, 2014, and July 6, 2016 (Exhibits 2F/28-29, 2F/39, and 7F/45).  He exhibited no abnormal movements and was verbal and cooperative on June 25, 2014 (Exhibit 2F/25).  He was verbal and demonstrated linear thought process on July 1, 2014 and August 5, 2014 (Exhibits 2F/14 and 2F/21). He exhibited no abnormal movements and was verbal, cooperative, and only mildly anxious on October 29, 2014 and January 16, 2015 (Exhibits 2F/2 and 2F/5).  On June 22, 2015, he had a normal appearance, average eye contact, normal psychomotor activity, cooperative attitude, full affect, clear speech, logical thought process, normal perceptions, and normal insight (Exhibit 5F/15). On August 18, 2015, he had an appropriate affect and normal insight and was not agitated, anxious, or hopeless (Exhibit 5F/10). Although he sometimes had suicidal thoughts, he denied suicidal intent (Exhibits 2F/2 and 2F/5). He generally exhibited good hygiene (Exhibits 5F/10, 7F/35, 7F/45, and 8F/10).  He demonstrated some circumstantiality on June 25, 2014 and impaired judgment on June 22, 2015, but he generally had linear thought process and normal judgment as mentioned above Exhibits 2F/25 and 5F/15).

(Doc. 25-3 at 30)

The ALJ rejected a portion of Dr. DeBattista's opinion as "inconsistent with the well-documented effectiveness of the claimant's mental health treatment (Exhibits 2F, 7F, and 8F)."  (*Id.* at 33)  The ALJ explained:

> [T]he treatment records reflect that the claimant's mental health treatment has generally been effective in improving his symptoms. A treatment record dated February 19, 2014 mentioned that his anxiety improved with medication (Exhibit 2F/35). According to a treatment record dated March 13, 2014, his sleep improved with melatonin and his anxiety improved with medication (Exhibit 2F/33). A treatment record dated April 8, 2014 reported that his sleep improved with melatonin and his panic attacks improved with medication (Exhibit 2F/31). A treatment record dated August 5, 2014 mentioned that his medication reduced the frequency of his auditory hallucinations and his depression and rituals improved (Exhibit 2F/14). According to a treatment record dated September 4, 2014, he was able to deal with his auditory hallucinations better had improvement in his symptoms and experienced less anxiety with meditation (Exhibit 2F/11). A treatment record dated October 29, 2014 reported that with medication he was thinking more clearly and having fewer auditory hallucinations (Exhibit 2F/5). On October 27, 2015, he felt that his psychotropic medication was effective (Exhibit 7F/16). On April 1, 2016, he felt that his psychotropic medication was effective for his anxiety (Exhibit 7F/27). According to a treatment record dated May 18, 2016, he had partial remission of depressive symptoms (Exhibit 7F/37). A treatment record dated July 6, 2016 mentioned that his sleep problems were fairly controlled (Exhibit 7F/43). A treatment record dated February 13, 2017 reported that his motivation and energy level improved (Exhibit 8F/13). Furthermore, despite the allegations of panic attacks hallucinations paranoia and suicidal ideation, he has not been hospitalized for psychiatric treatment since the alleged disability onset date (Exhibit 4F).

(Doc. 25-3 at 31)

1

2    a.  Waiver of the issue

   Plaintiff identifies Dr. DeBattista's statement as relevant medical evidence in his opening brief

3 and cites the limits the ALJ rejected in support of the argument that Plaintiff satisfies a Listing.  (*See*

4 Doc. 30 at 5-6, 12, 14-15, 19)  Significantly, however, Plaintiff does not challenge—or even

5 acknowledge—the ALJ's evaluation of Dr. DeBattista's opinion, or the reasons identified for rejecting

6 portions.  (*See generally* Doc. 30 at 13-20)

7   Because Plaintiff has not raised the issue in his opening brief, he has waived any challenge to

8 the ALJ's findings related to the opinion of Dr. DeBattista.  *See Indep. Towers of Wash. v. Washington*,

9 350 F.3d 925, 929 (9th Cir. 2003) (when a claim of error is not argued and explained, the argument is

10 waived); *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (argument not made in a

11 disability claimant's opening brief was deemed waived); *Zango v. Kaspersky Lab, Inc*., 568 F.3d 1169,

12 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived").

13      b.  The ALJ's reasoning

14   Even if Plaintiff had not waived any challenge to the evaluation of Dr. DeBattista's opinion,

15 the ALJ identified specific and legitimate reasons for rejecting the identified portions.  As noted

16 above, the ALJ found the rejected portions of Dr. DeBattista's opinion conflicted with the medical

17 record and documented effectiveness of Plaintiff's mental health treatment.  (Doc. 25-3 at 33)

18   The effectiveness of treatment as a relevant factor for evaluating the severity of a claimant's

19 symptoms.  *See* 20 C.F.R. § 416.929(c)(3).  In addition, the Ninth Circuit determined an ALJ may reject

20 medical opinions that are inconsistent with the overall record.  *See Morgan v. Comm'r of the Soc. Sec.*

21 *Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see also Batson v. Comm'r of the Soc. Sec. Admin.,* 359

22 F.3d 1190, 1195 (9th Cir. 2003 (an ALJ may reject an opinion when it is "unsupported by the record as

23 a whole"). Because the ALJ carried his burden to identify conflicting medical evidence and document

24 the effectiveness of treatment, the reasons identified by the ALJ support the decision to reject the

25 identified portions of Dr. DeBattista's opinion.  *See Cotton v. Bowen,* 799 F.2d at 1403, 1408 (9th Cir.

26 1986); *Morgan*, 169 F.3d at 602-03.

27 **B.  The Listings and "Paragraph B" Criteria**

28   At Step Three, "[a]n ALJ must evaluate the relevant evidence before concluding that a

claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  The Listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted, emphasis in original).  The claimant bears the burden of demonstrating his impairments equal a Listing. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d).  "If the impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled." *Bowen*, 482 U.S. at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

Plaintiff asserts, "The ALJ failed to address Adult Mental Listing 12.03," and asserts this Listing results in a finding that he is disabled. (Doc. 30 at 13)  The Commissioner argues Plaintiff's argument "is untrue" because "[t]he ALJ specifically references listing 12.03 in his discussion of the listings and his step three findings." (Doc. 33 at 6, citing AR 26 [Doc. 25-3 at 27])

### 1.   Listing 12.03

Listing 12.03 relates to the schizophrenia spectrum and other psychotic disorders, which are "characterized by delusions, hallucinations, disorganized speech, or grossly disorganized or catatonic behavior, causing a clinically significant decline in functioning." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)(2)(a).  Contrary to Plaintiff's assertion, after finding Plaintiff's severe impairments included schizoaffective disorder, the ALJ considered Listing 12.03 at step three of the evaluation. (Doc. 25-3 at 25, 27)  Specifically, the ALJ determined Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of **listings 12.03**, 12.04, 12.06, and 12.15."  (Doc. 25-3 at 27, emphasis added).

A claimant must meet the requirements of 12.03(A), as well as either 12.03(B) or 12.03(C).  20 CFR Pt. 404, Subpt. P, App. 1, § 12.03(A)-(C).  In making the finding that Plaintiff did not meet the requirements of Listing 12.03, the ALJ "considered whether the 'paragraph B' criteria [were] satisfied." (Doc. 25-3 at 27; *see also id.* at 27-29)  The ALJ "also considered whether the 'paragraph C' criteria are satisfied."  (*Id.* at 29)

///

///

12

2.      "Paragraph B" criteria[2]

The "Paragraph B" criteria set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1 are used to evaluate the mental impairments of a claimant, and include the ability to: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *See id.*, §12.00(A)(2)(b) (2018). To satisfy the Paragraph B criteria, a claimant's "mental disorder must result in an 'extreme' limitation of one or a 'marked' limitation of two [of the identified domains]." *See Caldwell v. Berryhill*, 2019 U.S. Dist. LEXIS 222592 at *25 (N.D. Cal. Sept. 2, 2019).

Plaintiff contends "Dr. DeBattista's evaluation includes two marked limitations," and a result "the medical evidence supports [a determination that] Kaminski meets [Paragraph] (B) of Adult Listing 12.03." (Doc. 30 at 15)  Notably, the evidence cited by Plaintiff demonstrates Dr. DeBattista found Plaintiff was "*moderately* to markedly impaired" with the ability to relate and interact with coworkers" and his ability to "associate with day-today work activity including activity and safety is markedly impaired." (*Id.* at 14-15, emphasis added)  Thus, the identified evidence does not clearly state Plaintiff has two marked limitations, but rather one limitation that is "moderate[] to marked[]" and one marked. (*See id.*)  Regardless, as discussed above, the ALJ properly rejected the conclusions of Dr. DeBattista related to Plaintiff's "ability to associate with day-to-day work activity, relate and interact with coworkers and the public, work a full[] day or week, maintain regular attendance, and perform work activities on a consistent basis." (*See* Doc. 25-3 at 33)  Because the evidence identified by Plaintiff was properly rejected, Plaintiff fails to demonstrate any error by the ALJ in evaluating the Paragraph B criteria based upon the findings of Dr. DeBattista.

Evaluating each of the Paragraph B domains, the ALJ found Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation." (Doc. 25-3 at 29)  Plaintiff does not challenge the ALJ's specific findings related to each of the domains. (*See* Doc. 30 at 13-14)

a.      Ability to understand, remember, or apply information

As explained by the Regulations, "[t]his area of mental functioning refers to the abilities to

---

[2] Revisions to the Regulations regarding mental impairments, effective January 17, 2017, resulted in new paragraph B criteria. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732 at *661676 (Sept. 26, 2016).  Thus, the Regulations in effect changed while Plaintiff's application was pending before the Social Security Administration.  The ALJ applied the revised version of the Paragraph B criteria in the opinion.  (*See* Doc. 25-3 at 27-29)

learn, recall, and use information to perform work activities." 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(1) (2018).  Examples of such abilities include "[u]nderstanding and learning terms, instructions, [and] procedures," and "following one-or two-step oral instructions to carry out a task." (*Id.*) In addition, the Commissioner may consider whether a claimant can use "reason and judgment to make work-related decisions."  (*Id.*)

The ALJ determined Plaintiff had "a mild to moderate limitation" with this domain.  (Doc. 25-3 at 27)  The ALJ found "the medical records documented no definitive diagnosis of a neurocognitive disorder, no positive findings from neuropsychological testing, and little evidence of cognitive problems."  (*Id.*)  In addition, the ALJ noted that during the consultative examination, Plaintiff "had difficulties with recent memory and the serial 3s test, but he demonstrated normal immediate memory, had adequate fund of knowledge, and was able to perform simple mathematical calculation and spell a word forwards and backwards."  (*Id.*)  Further, the ALJ observed that Plaintiff showed "no difficulty understanding or answering questions" during an interview with a Social Security employee and he could "generally … understand and answer questions during the hearing." (*Id.*)  Finally, the ALJ noted Plaintiff was "able to drive a car, prepare simple meals, do some cleaning and laundry, wash dishes, count change, handle a savings account, use a checkbook or money orders, use a computer and a smartphone, fix computers in his spare time, and utilize the internet.  (*Id.*, citing Exh. 5E, 3F, 4F, and hearing testimony).

Given the evidence concerning Plaintiff's abilities and activities identified by the ALJ in his opinion—and Plaintiff's failure to either challenge this Paragraph B domain or identify any objective medical evidence to the contrary—the Court finds the ALJ did not err in finding Plaintiff had only a "mild to moderate" restriction with his ability to understand, remember, or apply information.[3]

### b.      Interacting with others

This domain "refers to the abilities to relate to and work with supervisors, coworkers, and the public." 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(2) (2018).  Examples of such abilities include,

---

[3] Addressing the former Paragraph B domains, this Court determined an ALJ did not err in finding a claimant had mild restrictions where the claimant was able to "attend to his personal hygiene," drive, attend church, perform light housekeeping chores, handled his own bills and money. *Ivy v. Comm'r of Soc. Sec.*, 2011 WL 2038579 at *10, 12 (E.D. Cal. May 24, 2011).  Plaintiff's ability to perform similar activities supports the ALJ's conclusion that Plaintiff has only mild to moderate limitations.

but are not limited to, "[c]ooperating with others;" "asking for help when needed;" and "understanding and responding to social cues (physical, verbal [and] emotional)." (*Id.*)  In addition, the Commissioner may consider whether a claimant can use "reason and judgment to make work-related decisions." (*Id.*)

The ALJ noted Plaintiff "complains of social withdrawal and anger outbursts." (Doc. 25-3 at 27)  However, the ALJ found "little objective evidence that he has engaged in major social isolation or has been involved in serious interpersonal conflicts." (*Id.*)  Rather, Plaintiff "was generally noted to be verbal and cooperative" during the adjudicated period. (*Id.*)  Further, the ALJ noted:

> He was able to live with others (e.g. Exhibits 5E, 2F/2, 2F/8, 2F/37, 3F/1, and 4F/2). He talks to family 3 times a week and is able to get along adequately with authority figures if the interaction is brief (Exhibit 5E). He can go out alone and attend weekly Alcoholics Anonymous meetings, which shows that he has some ability to leave home and be around people (Exhibit 5E and hearing testimony). Moreover, during a telephone interview with a Social Security employee conducted on January 23, 2015, the claimant spoke in a low tone but he was courteous and polite (Exhibit IE). Furthermore, I observed that the claimant was generally able to respond to questions and interact appropriately during the hearing conducted on April 3, 2017.

(Doc. 25-3 at 27-28)

Reviewing the medical evidence, the ALJ also noted Drs. Haroun and Garcia concluded Plaintiff's mental impairments caused "only mild difficulties in maintaining social functioning" while addressing the prior Paragraph B criteria.[4]  (*Id.* at 28-39, citing Exh. 1A, 3A [Doc. 25-4 at 6-7, 20-23])  In making this determination, Dr. Haroun noted Plaintiff was able to "go places on his own," "regularly see his doctors, and able to have social interactions." (Doc. 25-4 at 6)  This evidence supports the ALJ's conclusion that Plaintiff did not have a "marked" limitation in this domain. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (holding the opinion of a non-examining physician "may constitute substantial evidence when it is consistent with other independent evidence in the record").

### c.    Concentration, persistence, or pace

Reviewing the third functional area of the Paragraph B criteria, the ALJ found Plaintiff "has a moderate limitation." (Doc. 25-3 at 28)  The ALJ determined "medical records documented no definitive diagnosis of a neurodevelopmental disorder, no relevant positive findings from

---

[4] Under the prior Paragraph B criteria, the domain of "social functioning" addressed a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals."  *See Arroyo v. Astrue,* 2010 U.S. Dist. LEXIS 120478 (E.D. Cal. Oct. 28, 2010).

neuropsychological testing, and little evidence of difficulties with concentration, persistence, and pace."

(*Id.*)  Specifically, the ALJ noted: "During a mental consultative examination conducted on May 15,

2015, he had difficulties with the serial 3s test, but he was able to perform a simple mathematical

calculation and spell a word forwards and backwards (Exhibit 4F)."  (*Id.*) Further, the ALJ observed:

> He has difficulties with written instructions but can follow spoken instruction adequately (Exhibit 5E). He has the ability to drive a car, which requires a considerable degree of concentration and attention. He can use a computer, a smartphone, and the internet, which require some concentration. He has sufficient concentration, persistence, and pace to prepare simple meals, do some cleaning and laundry, wash dishes, and fix computers in his spare time (Exhibits 5E, 3F, 4F, and hearing testimony). His daily activities include reading, which also requires some concentration (Exhibit 5E). Moreover, during a telephone interview with a Social Security employee conducted on January 23, 2015, the claimant showed no difficulty concentrating (Exhibit 1E). Furthermore, I observed that the claimant was able to follow closely and participate fully during the hearing conducted on April 3, 2017.

(Doc. 25-3 at 28)

The medical evidence also supports the conclusion that Plaintiff did not have a "marked"

impairment in this domain. As the ALJ noted—and Plaintiff acknowledges— Dr. DeBattista opined

Plaintiff's "ability to maintain concentration, attention, persistence, and pace was only mildly to

moderately limited." (Doc. 25-3 at 32; *see also* Doc. 30 at 14)  The ALJ also observed that Drs. Haroun

and Garcia reviewed the record and found Plaintiff had "no more than moderate difficulties in

maintaining concentration, persistence, or pace," which is consistent with the level of limitation

identified by Dr. DeBattista. (*Id.* at 28-29)

Plaintiff does not challenge the identified evidence or the ALJ's findings related to Plaintiff's

ability to maintain concentration, persistence, and pace.  In addition, the ALJ's conclusion is supported

by substantial evidence in the record, including the opinions of Drs. DeBattista, Haroun, and Garcia.

*See Tonapetyan,* 242 F.3d at 1149 (opinions of a physician that "rest[] on independent examination" are

substantial evidence, and a non-examining physician's opinion "may constitute substantial evidence

when it is consistent with other independent evidence in the record"); *see also Orn v. Astrue*, 495 F.3d

625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such

findings are substantial evidence).  Thus, Plaintiff fails to show any error by the ALJ in finding his

limitation was less than marked with this domain.

///

16

1

　　　　d.　　Adapt or manage oneself

2

This domain addresses the "abilities to regulate emotions, control behavior, and maintain well-

3

being in a work setting."  20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(4). The Regulations identify

4

examples such as "making plans for yourself independently of others; maintaining personal hygiene

5

and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate

6

precautions." *Id.*  Thus, an ALJ may consider evidence related to a claimant's appearance, hygiene,

7

behavior, perception, thoughts, orientation, and memory. *See Covell v. Berryhill,* 2019 WL 78995, at

8

*10 (D. Mass. Jan. 2, 2019); *Icobucci v. Berryhill*, 2018 U.S. Dist. LEXIS 96076, at *5 (W.D.N.Y. June

9

7, 2018) (a claimant did "not have… deficits in adaptive functioning" where she was able to clean,

10

shop, take care of her daughter, and "[the] plaintiff stated that she could perform her own personal

11

needs, follow directions, and can take standardized measures of intellectual functioning testing").

12

The ALJ observed Plaintiff's "thought process, insight, and judgment were generally normal

13

and he denied suicidal intent."  (Doc. 25-3 at 28)  The ALJ also found:

14

> [T]here is little definitive evidence that he has had significant difficulties with activities

15

> of daily living because of his mental impairment. Although he needs reminders, he is
> essentially independent in personal care (Exhibits 5E, 3F, and 4F). In fact, he generally

16

> exhibited good hygiene (Exhibits 5F/10, 7F/35, 7F/45, and 8F/10). He was only mildly
> disheveled on May 15, 2015 (Exhibit 4F). He also had a normal appearance on June 22,

17

> 2015 (Exhibit 5F/15). He can prepare simple meals, do some cleaning and laundry, and
> wash dishes. He has the ability to drive a car. He is able to count change, handle a

18

> savings account, and use a checkbook or money orders. He can use a computer, a
> smartphone, and the internet (Exhibits 5E, 3F, 4F, and hearing testimony). A treatment

19

> record dated June 25, 2014 mentioned that he cared for a house for room and board
> (Exhibit 2F/25).

20

(Doc. 25-3 at 28)  This evidence identified by the ALJ supports his conclusion that Plaintiff had "a mild

21

limitation" restriction with this domain.  *See Covell,* 2019 WL 78995, at *10; *Icobucci*, 2018 U.S. Dist.

22

LEXIS 96076, at *5; *see also Ivy v. Comm'r of Soc. Sec.*, 2011 WL 2038579 at *10, 12 (E.D. Cal. May

23

24, 2011) (addressing the prior Paragraph B domains, and finding an ALJ did not err in finding a

24

claimant had mild restrictions where he was able to "attend to his personal hygiene," drive, attend

25

church, perform light housekeeping chores, and handle his own bills and money).

26

　　　　3.　　"Paragraph C" criteria

27

The Listings provide that "[t]he paragraph C criteria are an alternative to the paragraph B

28

criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15."  20 C.F.R., Pt. 404, Subpart P, App. 1, §

12.00(G)(1).  The ALJ determined: "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria."  (Doc. 25-3 at 29)  The ALJ explained, "The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the Claimant's environment or to demands that are not already part of the claimant's daily life."  (*Id.*) Plaintiff does not challenge to the ALJ's findings regarding the Paragraph C criteria.  (*See* Doc. 30 at 15 (asserting only that Plaintiff "meets (A) and (B) of Adult Listing 12.03")).  Thus, any challenge to this finding has been waived.

### 4.    Conclusion

Plaintiff fails to challenge the evidence identified by the ALJ in each of the "Paragraph B" domains, and the ALJ's findings are supported by substantial evidence in the record.  Because Plaintiff failed to carry the burden to establish his impairments result in an 'extreme' limitation of one domain or a 'marked' limitation of two of the domains under Paragraph B, Plaintiff fails to show any error by the ALJ in his analysis of the requirements under Listing 12.03.

## C.    Plaintiff's Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating an RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

According to Plaintiff, "The ALJ failed to use medical evidence to provide a mental residual functional capacity evaluation as required by evaluation as required by Social Security Ruling 85-16." (Doc. 30 at 19)  In addition, Plaintiff asserts that the ALJ failed to address his "hallucinations or compulsive ritual" in his RFC.  (*Id.* at 19-20)  The Commissioner argues "Plaintiff's citation to SSR 85-16 does not establish error," and asserts the ALJ's findings were supported by substantial evidence in the record.  (Doc. 33 at 10)

18

1        1.     Social Security Ruling 85-16

2    Social Security Ruling[5] ("SSR") 85-16 sets forth the kinds of evidence the administrative law

3    judge must consider when determining a plaintiff's RFC, including: "[h]istory, findings, and

4    observations from medical sources"; reports of the claimant's "activities of daily living and work

5    activity"; and testimony of third parties about the claimant's performance and behavior.  *See* SSR 85-

6    16, 1985 WL 56855.

7        Other than identifying SSR 85-16 as the Ruling addressing "the importance of residual

8    functional capacity assessments" (Doc. 30 at 19), Plaintiff fails to argue how he believes the ALJ

9    violated SSR 85-16 in formulating the RFC.  It is unclear whether Plaintiff believes the ALJ did not

10   address relevant evidence in the record or had a burden to re-contact medical sources to clarify an

11   "incomplete" opinion.  *See generally* SSR 85-16, 1985 WL 56855. The Court cannot speculate as to the

12   grounds of error claimed.  *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir.

13   2003) (the Court "cannot manufacture arguments for an appellant and therefore [the Court] will not

14   consider any claims that were not actually argued.")  Therefore, the Court finds Plaintiff failed to

15   establish any error by the ALJ under SSR 85-16.

16       2.     The Paragraph B findings and Plaintiff's RFC

17       Plaintiff argues that the ALJ failed to address his "hallucinations or compulsive ritual" in the

18   RFC.  (Doc. 30 at 19-20) However, Plaintiff fails to identify medical evidence—other than what the

19   ALJ rejected, as discussed above— that he believes should have been incorporated into the RFC to

20   account for his hallucinations or compulsive rituals. Previously, the Ninth Circuit "reject[ed] any

21   invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way"

22   where "the RFC include[d] several physical limitations." *See Valentine v. Comm'r SSA*, 574 F.3d 685,

23   692 n.2 (9th Cir. 2009). In *Valentine*, the claimant asserted the ALJ failed to account for his knee and

24   shoulder injuries in the RFC yet failed to identify "what other physical limitations follow[ed] from the

25   evidence of his knee and should injuries, besides the limitations already listed in the RFC." *Id.*

26

27        [5] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not

28   have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). Despite not carrying the "force of law," the Rulings are binding on ALJs. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

Similarly here, the RFC included several mental limitations—including a restriction to simple, routine, and repetitive work, low stress jobs, and reduced interactions with the public (Doc. 25-3 at 29)— and Plaintiff fails to identify additional limitations he believes should have been incorporated in the RFC.

District courts throughout the Ninth Circuit determined failure to identify specific limitations that should have been incorporated into an RFC is fatal to a claimant's challenge of the ALJ's RFC determination. *See, e.g., Juarez v. Colvin*, 2014 U.S. Dist. LEXIS 37745 at *15 (C.D. Cal. Mar. 20, 2014) (rejecting an argument that the ALJ erred in evaluating the claimant's limitations where she had "not specified or proffered evidence of any additional limitations from the arthritis that the ALJ failed to consider"); *Hansen v. Berryhill*, 2018 U.S. Dist. LEXIS 19489 (W.D. Wash. Feb. 6, 2018) ("Although Plaintiff argues that the ALJ erred in failing to account for the limitations caused by his ADHD in the RFC assessment, he does not identify which limitations were erroneously omitted, and has thus failed to state an allegation of error in the RFC assessment with the requisite specificity"); *Thomas v. Comm'r of SSA*, 2015 U.S. Dist. LEXIS 99338 at *21 (Dist. Or. Jul 30, 2015) ("Plaintiff does not cite to evidence of … limitations stemming from these impairments beyond those already listed in his RFC. Without more specific information on how these conditions hinder Plaintiff, the Court declines to find the ALJ failed to account for Plaintiff's limitations"). Accordingly, the Court is unable to speculate as to the limitations Plaintiff believes the ALJ should have incorporated into the RFC to account for his reported hallucinations and compulsive behaviors. *See Valentine*, 574 F.3d at 692 n. 2; *see also Indep. Towers of Wash.*, 350 F.3d at 929.

Moreover, the ALJ specifically indicated the "the residual functional capacity assessment reflects the degree of limitation … found in the 'paragraph B' mental function analysis," with which the ALJ addressed the severity of Plaintiff's symptoms, including for his schizoaffective disorder and obsessive-compulsive disorder.  (*See* Doc. 25 at 29) When an ALJ performs the Paragraph B analysis and indicates the "degree of limitation" is incorporated into the RFC, this is sufficient to meet the burden imposed by the Regulations.  *See Ming Y. Huang v. Berryhill*, 2017 WL 6557757, at *8- 9 (S.D. Cal. Dec. 22, 2017) (rejecting the plaintiff's argument that the ALJ erred by not including her mental limitations in the RFC where the ALJ reviewed the Paragraph B criteria "and expressly incorporated [the] mild mental limitations into the RFC"), *adopted in* 2018 WL 480806; *Scotellaro v. Colvin*, 2015

WL 4275970 at *9 (D. Nev. June 22, 2015) (finding "the ALJ considered Plaintiff's mild mental limitation in his RFC analysis where the ALJ analyzed the Paragraph B criteria "incorporated [it] by reference in his RFC analysis"). As discussed above, the Paragraph B findings were supported by substantial evidence in the record, and the ALJ properly incorporated these conclusions into the RFC.

**D.    Waiver Regarding Plaintiff's Testimony**

As Plaintiff observes, "The ALJ is required to address [a claimant's] credibility according to the standards set for at 20 C.F.R. § 404.1529 and SSR 96-7p." (Doc. 30 at 20) An ALJ is required to make credibility determinations in each decision, to determine whether a claimant's subjective complaints should be credited. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The Ninth Circuit explained, "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.*

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms" lacked credibility. (Doc. 25-3 at 30) In support of this determination, the ALJ considered the objective medical record, Plaintiff's treatment history, observations of the Social Security employee, the ALJ's own observations at the hearing, and Plaintiff's daily activities. (*See id.* at 30-34) These are all proper factors for an ALJ to consider in evaluating a claimant's subjective complaints. 20 C.F.R. §§ 404.1529(c) (factors include observations of Social Security employees are considered, a claimant's daily activities, treatment received, and objective medical evidence); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (an ALJ may consider his "personal observations… in the overall evaluation of the credibility of the individual's statements"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff does not address the ALJ's findings regarding the credibility of his subjective complaints in the opening brief, or any of the factors considered related to the adverse credibility determination. Instead, Plaintiff merely asserts he "provided testimony which has not been contradicted" and argues his testimony should be credited as true. (Doc. 30 at 20)

Importantly, the Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)

(quoting *Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994)). Rather, the Court will "review only issues with are argued specifically and distinctly." *Id.* Therefore, when a claim of error is not argued and explained, the argument is waived. *See id.* at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge").

Because Plaintiff does not address the ALJ's findings regarding the adverse credibility determination in his opening brief, any challenge to the credibility determination was waived. *See Hibbs v. Dep't of Human Res*., 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding the assertion of error was "too undeveloped to be capable of assessment"); *Bray*, 554 F.3d at 1226 n.7 (where a claimant failed to explain an argument in the opening brief, the Court deemed it waived).  Moreover, Plaintiff fails to identify any specific portions of his testimony that he believes should have been incorporated into the ALJ's residual functional capacity, and the Court will not speculate as to the error. *Valentine*, 574 F.3d at 692 n.2 ("We reject any invitation to find that the ALJ failed to account for [a claimant's] injuries in some unspecified way"); *Indep. Towers of Wash*., 350 F.3d at 929.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ applied the proper legal standards and the decision is supported by substantial evidence in the record. Because Plaintiff fails to establish any reversible error by the ALJ, the administrative decision must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. Plaintiff's motion for summary judgment (Doc. 30) is **DENIED**;

2. The decision of the Commissioner of Social Security is **AFFIRMED**; and

3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff John Kaminski.

IT IS SO ORDERED.

Dated:   __September 13, 2020__          _____**/s/ Jennifer L. Thurston**
                                    UNITED STATES MAGISTRATE JUDGE

22